Dear Mayor Perritt:
This office is in receipt of your request for an opinion of the Attorney General in regard to the power of the Aldermen in a Lawrason Act community to write an ordinance that serves as an Employee Handbook. You set forth the following questions:
 1. Section 1.00 Do they have the power to organize the City into eight departments with eight department heads without the verbal or written recommendation of the Mayor whereas there are presently five?
 2. Section 1.10 Do they have the power to require the Mayor to nominate a department head no later than fifteen days after a retirement or resignation when this same ordinance calls for public advertising of department head status positions three times within fifteen days before filling department head vacancies (See 3.17 Hiring), and because some of these positions require specialized degrees and experiences, the search has to extend beyond the boundaries of our parish with time for interviews etc.?
 3. Section 2.00, 2.10, 2:12 Do they have authority to establish a Board of Ethics for City Employees (which would include one Aldermen) "to hear and consider each case of involuntary termination and/or disciplinary action and to determine whether or not such termination or discipline is appropriate" with the Ethic's Board's decision final which cannot be reversed by any authority other than a court of law?
 4. Section 3.13(b) Do they have the authority to delegate a particular administrative staff person who is not a department head to investigate a sexual, racial, or religious harassment complaint and/or designate the Board of Ethics to perform this administrative function?
 5. Section 3.13(e), 3.14(b, c) Do they have the power to legislate that sexual, racial, or religious harassment determinations (discipline, up to and including discharge) may be appealed to the Board of Ethics (which includes an Alderman) and that any disciplinary action (i.e. suspension without pay) involving salaries must have the approval of the Board of Aldermen?
 6. Section 3.20 Do they have the authority to state, "Arbitrary, capricious, or politically motivated terminations are not permitted and employees so terminated will remain on full pay until the issue is settled" without defining arbitrary, capricious, or politically motivated, so that they can maintain that anyone terminated by the administration can remain with full pay on the payroll?
 7. Section 3.21 Do they have the authority to absolutely limit administrative discipline and to do so according to the following:
 1. Limit first offense to verbal warning which cannot be part of the record unless it involves the Board of Ethics (which includes an Alderman).
 2. Limit second offense to verbal warning and "training".
 3. Limit third offense to written warning.
 4. Limit fourth offense to written reprimand.
 5. Limit fifth offense to up to a three day suspension.
 8. Section 3.22 Do they have the power to limit the Mayor's right to fire by requiring cause upon a Department Head's recommendation and approval of the Board of Ethics and then only after the employee has been given an opportunity to correct his deficiency? Do they have the power through a local ordinance to remove the "at will" provisions of state statutes?
 9. Do they have the right to create a Board of Ethics and empower it to approve, modify, or rescind dismissal actions taken by the administration and order reinstatement or re-employment retroactively with back pay?
Being a Lawrason Act community, the City of Ruston is governed by the provisions of R.S. 33:321 et seq. R.S. 33:404
sets forth the duties of mayor, and provides in pertinent part as follows:
 A. The mayor shall have the following powers, duties, and responsibilities:
 (1) To supervise and direct the administration and operation of all municipal departments, offices, and agencies, other than a police department with an elected chief of police, in conformity with ordinances adopted by the board of aldermen and with applicable provisions of state law. All administrative staff shall be subordinate to the mayor.
 (2) To delegate the performance of administrative duties to such municipal officers or employees as he deems necessary and advisable.
In Atty. Gen. Op. No. 87-477 this office recognized in a Lawrason Act community the mayor is the chief executive officer of the municipality, and is given the authority to supervise and direct the administration and operation of all municipal departments except a police department with an elected chief of police. It was found that an ordinance that would interfere with the mayor's right to conduct the daily operations of the municipality was improper. However, it was noted that the aldermen can provide policies and procedures regulating the employment of municipal employees such as limitation of the number of employees.
This office was asked to consider the validity of an ordinance giving the aldermen authority to appoint a committee to hire, fire, investigate and discipline town employees. With reliance upon Bourgere v. Anzelmo, 517 So.2d 1121 (La.App 1987), it was concluded in Atty. Gen. Op. No. 90-112 that an ordinance giving a committee the power to hire, fire or suspend, or even participate with the Mayor was invalid. Citing the Bourgere case, the opinion noted that the Mayor's right to hire and fire is subject only to the "policies and procedures" promulgated by the board of aldermen, and then quoted the court as saying, "This duty to enact policies and procedures does not extend to the right to make individual decisions." It was recognized while the aldermen's authority to promulgate the policies and procedures for the hiring and firing extends to such things as qualifications, limiting the number of employees, and office hours, they do not have the authority to do the hiring, firing or disciplining.
With these statutory provisions in mind that establish the mayor as the chief executive officer of the municipality with the responsibilities of administering the municipality subject to the policies and procedures promulgated by the board of aldermen, we would conclude in answering your questions that the board can only organize the City into various departments by ordinance upon the Mayor's recommendation, and those departments cannot interfere with the Mayor's administrative authority.
R.S. 33:362 (C) provides as follows:
 Any department of a municipality, other than a police department in a municipality with an elected chief of police, shall be created, abolished, merged, or consolidated by the board of aldermen, upon written recommendation of the mayor.
Moreover, you state the Board intends to create three additional departments to include City Attorney, Personnel and Human Resources Director, and Purchasing Director. The city attorney is appointed by the Mayor subject to confirmation by the Board in accordance with R.S. 33:386; the city employees are subject to supervision by the Mayor in the day to day operation of the city; and purchases are signed by the Mayor in accordance with budgetary provisions. The titles seem to indicate a possible interference with the administrative duties of the Mayor, and, if so, would be invalid without approval by the Mayor.
You ask whether the Board has the power to require the Mayor to nominate a department head no later than fifteen days after a retirement or resignation. As stated hereinabove, the board may establish the policies and procedures for administration of the municipality, but we must conclude these policies and procedures must be reasonable and not interfere with the Mayor's authority. If a nomination to fill a position resulting from retirement or resignation cannot be reasonably made by the fifteenth day after a vacancy, the provision cannot be enforced, and injunctive relief could be sought. However, it must recognized, as set forth in the provision, often there is advance notice of retirements and resignations that may permit anticipation of the vacancy and early commencement of the process of finding a replacement so that the fifteen days may not be unreasonable, although each situation would depend upon the advance knowledge.
Moreover, we take particular note of the fact that Sec. 1.10 under question does provide that "all of the department head positions and other positions will be filled as prescribed by theLawrason Act and legislative action of the Board of Aldermen." In this matter it must be recognized the legislative action of the Board cannot be contrary to that prescribed by statute that the Mayor, subject to confirmation by the Board of Aldermen shall appoint, a clerk, tax collector and all other necessary officers. The mayor cannot be unduly restricted in this matter.
Your remaining questions are relative to the legality of specified disciplinary action such as establishing a Board of Ethics to consider termination or disciplinary action, having a staff person to investigate harassment complaints with appeals to the Board of Ethics, disciplinary action involving salaries to be approved by the Board, restricting disciplinary action that can be taken and requiring firing only after a finding of cause upon a department head's recommendation and approval of the Board of Ethics.
In this regard we feel that the invalidity of the establishment of an Ethics Board and the limits on discipline is governed by the decision as referred to previously of Bourgere v.Anzelmo, supra, which held that ordinances placing constraints upon hiring, firing and suspension of non-civil service municipal employees by the Mayor is in conflict with the state statute giving the Mayor the administrative responsibilities. This office has previously concluded an ordinance giving a committee the power to hire, fire or suspend, or even participate jointly with the Mayor is invalid, Atty. Gen. Op. No. 90-112.
Accordingly, we must conclude the Board of Aldermen cannot establish a Board of Ethics to determine appropriate discipline; delegate a person to investigate harassment complaints; provide for appeals on harassment discipline determinations and approval by the Board for enforcement; provide for retention and full pay of an employee for "arbitrary, capricious or politically motivated" termination, this being a matter for judicial determination; limit administrative discipline for successive offenses; require recommendation of a Department Head or Board of Ethics for the Mayor to fire when not a civil service employee; or have a Board of Ethics empowered to act and alter dismissal action of the Mayor.
As you recognize, the legislature has established a division of municipal power and responsibilities between the Board of Aldermen, who is vested with legislative authority, and the Mayor, who is the municipality's executive officer. In its legislative function the Board cannot establish policies and procedures that infringe upon the executive duties of the Mayor by limiting his power to discipline municipal employees. Such infringement would be subject to injunctive relief.
We hope this sufficiently answers your inquires.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: __________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR